UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAYLE A. SPENCER,

          Plaintiff,                             Civil Action No.
                                                 07-CV-11135
vs.

                                            HON. BERNARD A. FRIEDMAN

MARYGROVE COLLEGE,

          Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on Defendant's Motion for Summary Judgment ("Defendant's Motion") [docket entry 27]. Plaintiff has filed a response ("Plaintiff's Response") and Defendant filed a reply ("Defendant's Reply"). The Court has had an opportunity to thoroughly examine the pleadings, motions papers, and evidence submitted by the parties. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court will decide this matter without oral argument. For the reasons that follow, the Court will deny Defendant's Motion.

## I.      FACTUAL BACKGROUND

This case arises under the Family Medical Leave Act ("FMLA"). Gayle Spencer ("Plaintiff") is a former employee of Marygrove College ("Marygrove" or "Defendant"). Prior to her termination, she held numerous job positions over the course of her thirty-year career with Defendant, her last position being Director of Student Affairs. (*See* Pl.'s Resp. at 1.) At all times relevant to this litigation, Plaintiff has suffered from diabetes. (Compl. at ¶ 10.)

The circumstances leading up to Plaintiff's termination on March 18, 2005, are summarized by Plaintiff in her Complaint as follows:

> 11. On or about December 6, 2004, plaintiff was taken from the workplace via ambulance to the hospital and was ultimately diagnosed as suffering from complications of her diabetes and/or pneumonia. Plaintiff was admitted to the hospital for approximately three (3) weeks time. Plaintiff was subsequently unable to return to work until March 23, 2005 due to her illness.
>
> 12. The defendant . . . knew of plaintiff's hospitalization and illness, as well as the reasons for plaintiff's absence from work commencing December 6, 2004.
>
> 13. The defendant granted plaintiff leave under the FMLA relative to her absence commencing on December 6, 2004.

(Compl. at ¶¶ 11-13.) Although Plaintiff was absent from work beginning on December 6, 2004, due to her hospitalization, both parties agree that she did not begin her FMLA leave until December 13, 2004. (Pl.'s Resp. at 2; Def.'s Mot. at 3.) Both parties also agree that Plaintiff was terminated on March 18, 2005. (Pl.'s Resp. at 1-2; Def.'s Mot. at 3.) Plaintiff asserts that her termination violated the FMLA because she had not yet exhausted her twelve-week statutory FMLA leave allotment at the time she was fired. Plaintiff also contends that Defendant retaliated against her because her termination was motivated by the fact that she had exercised her FMLA rights. Plaintiff seeks damages as follows:

> all damages available at law, both past, present and into the future, specifically including emotional distress, pain and suffering, mental distress and all damages set forth in 29 USC § 2617, including but not limited to lost wages, lost salary, loss of employment benefits, loss of other compensation denied and lost, cost of care, medical expenses, interest, costs of litigation, attorney fees and liquidated damages equal to the sum set forth in 29 USC § 2617.

(Compl. at ¶ 26.)

II.    **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact . . ." FED. R. CIV. P. 56(c). "When reviewing a motion for summary judgment, [a court] must draw all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Moreover,

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party discharges this burden, the burden then shifts to the nonmoving party to "provide evidence beyond the pleadings 'set[ting] out specific facts showing a genuine issue for trial.'" *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 379 (6th Cir. 2008) (quoting FED. R. CIV. P. 56(e)).

III.    **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "On return from FMLA leave, an employee is entitled to be returned to the same

position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214(a). However, "an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506-507 (6th Cir. 2006); *see also* 29 C.F.R. § 825.214(b). Title 29, § 2615(a)(1) of the United States Code prohibits covered employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right" conferred to an eligible employee by the FMLA. Further, § 2615(a)(2) makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. "Two distinct theories of recovery arise under these statutes." *Edgar*, 443 F.3d at 507. "Under the entitlement theory (which some courts refer to as the interference theory), '[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA–for example, a twelve-week leave or reinstatement after taking a medical leave.'" *Id.* (quoting *Arban v. W. Publ'g. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)). Retaliation claims, on the other hand, "impose liability on employers that act against employees specifically because those employees invoked their FMLA rights." *Id.* at 508. In the present case, Plaintiff advances both entitlement and retaliation claims. The Court will address the merits of Plaintiff's entitlement claim first. The Court will then discuss Plaintiff's retaliation claim.

(A)     *Plaintiff's Entitlement Claim*

As stated by the Sixth Circuit,

[t]o prevail on an entitlement claim, an employee must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave

4

the employer notice of her intention to take leave, and (5) the employer
denied the employee FMLA benefits to which she was entitled.

*Edgar*, 443 F.3d at 507. In the present case, the parties contest only the fifth element of the *Edgar*

test. Plaintiff claims that she was terminated from her position with Defendant before she exhausted

her statutory FMLA leave entitlement. If this is true, Plaintiff would have a viable entitlement claim

under § 2615(a)(1). Defendant, on the other hand, insists that Plaintiff was terminated when she

failed to return to work *after* she exhausted her twelve-week FMLA leave allotment. If Defendant

is correct, Plaintiff would not have a viable entitlement claim because she had no right to

reinstatement if she failed to return to work following the expiration of her annual leave allotment.

Additionally, Defendant contends that even if it terminated Plaintiff before the expiration of her

FMLA leave allotment, Plaintiff is still not entitled to recover—or the amount of her recovery

should be limited—because (1) Plaintiff failed to comply with certain requirements under the

FMLA, (2) Defendant would have been entitled to terminate Plaintiff based on her post-termination

medical problems, and (3) Plaintiff is estopped from recovering damages incurred after a certain date

because she wrote in her applications for federal social security disability insurance and state

medical assistance that she has been disabled and unable to work since December 2004. The Court

will first address whether Defendant's termination of Plaintiff on March 18, 2008, violated the

FMLA. For the reasons explained directly below, the Court answers this question in the affirmative.

The Court then addresses each of Defendant's three defenses, in turn.

   1.  <u>Plaintiff's Termination on March 18, 2005, Violated the FMLA</u>

   Both parties agree that (1) Plaintiff's FMLA leave began on December 13, 2004, (2)

Plaintiff was terminated on March 18, 2005, and (3) Plaintiff did not work at all from the date her

leave began until the date she was terminated. However, the parties disagree about the proper method of calculation to be used to measure the twelve-month period in which the twelve weeks of FMLA leave entitlement occurs.[1] According to 29 C.F.R. § 825.200(b), which is sometimes referred to as the "leave year" regulation,

> [a]n employer is permitted to choose any one of the following methods for determining the "12-month period" in which the 12 weeks of leave entitlement occurs:
>
> (1) The calendar year;
>
> (2) Any fixed 12-month "leave year," such as a fiscal year, a year required by State law, or a year starting on an employee's "anniversary" date;
>
> (3) The 12-month period measured forward from the date any employee's first FMLA leave begins; or,
>
> (4) A "rolling" 12-month period measured backward from the date an employee uses any FMLA leave (except that such measure may not extend back before August 5, 1993).

However, "[i]f an employer fails to select one of the [four] options in paragraph (b) . . . for measuring the 12-month period, the option that provides the most beneficial outcome for the employee will be used." 29 C.F.R. § 825.200(e). As the Ninth Circuit has noted, although "[t]he regulations allow employers to choose among four methods for calculating their employees' eligibility for FMLA leave, . . . they do not specifically state how an employer indicates its choice." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1127 (9th Cir. 2001). Nevertheless, the

---

[1] As stated above, Plaintiff—as an eligible employee—is "entitled to a total of 12 workweeks of leave during any 12-month period . . ." 29 U.S.C. § 2612(a)(1).

*Bachelder* court held that "[t]he regulations . . . plainly contemplate that the employer's selection of one of the four calculation methods will be an open one, not a secret kept from the employees, the affected individuals." *Id*. In so holding, the court relied upon 29 C.F.R. § 825.301(a)(1), which states as follows:

> If an FMLA-covered employer has any eligible employees and has any written guidance to employees concerning employee benefits or leave rights, such as in an employee handbook, information concerning FMLA entitlements and employee obligations under the FMLA must be included in the handbook or other document. For example, if an employer provides an employee handbook to all employees that describes the employer's policies regarding leave, wages, attendance, and similar matters, the handbook must incorporate information on FMLA rights and responsibilities and the employer's policies regarding the FMLA.[2]

The *Bachelder* court determined that employers with employee handbooks must notify their employees in accordance with § 825.301(a)(1) of the selection of a calculation method under § 825.200(b), and that the selection must be "an open rather than a secret act . . ." *Id*. at 1128. If an employer fails to notify its employees in such a manner, § 825.200(e) applies and "the option that provides the most beneficial outcome for the employee" must be used. *See id.* at 1129.

In the present case, Defendant is bound by § 825.301(a)(1) because it has an employee handbook in which FMLA leave is discussed. (*See* Def.'s Mot. at Ex. 10, p. 37.) The

_____

[2] As explained by the Department of Labor,

> [t]he purpose of this provision is to provide employees the opportunity to learn from their employers of the manner in which that employer intends to implement FMLA and what company policies and procedures are applicable so that employees may make FMLA plans fully aware of their rights and obligations. It was anticipated that to some large degree these policies would be peculiar to that employer.

60 Fed. Reg. 2180-01 at 2219 (Jan. 6, 1995).

question presented, then, is whether Defendant selected a calculation method and notified its employees of that method in an "open" manner. Plaintiff argues that Defendant failed to clearly communicate its selection and that, pursuant to § 825.200(e), the option that provides her with the most beneficial outcome must be used. Plaintiff states that the "calender year" method embodied in § 825.200(b)(1) is the most beneficial to her, and that under this method her FMLA leave allotment expired on March 28, 2005, ten days after she was terminated. If the calender year method applies in this case, Defendant violated Plaintiff's FMLA rights by terminating her on March 18, 2005, before the expiration of her available leave period.

Defendant, on the other hand, argues that it gave its employees—including Plaintiff—proper notice that it calculated the twelve-month period using the "any fixed year" method embodied in § 825.200(b)(2). According to Defendant, its employees are entitled to twelve weeks of leave every school year; that is, from July 1 through June 30. Under this method of calculation, Plaintiff's twelve-week leave allotment expired on March 4, 2005, fourteen days before Plaintiff was terminated. Thus, if this method is used, Plaintiff's entitlement claim would be defeated since the expiration of her allowable FMLA leave predated her termination on March 18, 2005.

Defendant attaches its Employee Handbook as Exhibit 10 to its Motion. On page 37 of the Handbook, Defendant's FMLA policy is discussed. The Handbook reads, in relevant part, "[e]mployees are entitled to take up to 12 weeks unpaid leave per year . . ." (Def.'s Mot. at Ex. 10, p. 37.) The twelve-week allotment is not discussed in any further detail. There is no mention of a method of calculation anywhere in Defendant's FMLA policy, nor is the word "year" defined. Nevertheless, Defendant argues that it gave Plaintiff proper notice that it uses its fiscal year to

determine the leave year. In support of that contention, Defendant states that "elsewhere" in its Employee Handbook (i.e., not in the section discussing the FMLA), it uses its fiscal year (i.e., July 1 to June 30) as the basis for its operations. "Vacation days are awarded under this fiscal year . . . . Employee evaluations and compensation adjustments occur on July 1 of each year . . . . Even sick days are awarded under the fiscal school year." (*See* Def.'s Mot. at 11.) Thus, Defendant argues that "Marygrove's policy that only 12 weeks of leave shall be taken by an employee in one year – refers to a school year." (*Id.*)

The Court finds that Defendant failed to specify a method of calculation and to notify Plaintiff of its selection in accordance with *Bachelder* and 29 C.F.R. § 825.301(a). The "selection of a method for calculating the leave year must be an open–not a secret–one before it can be applied to an employee's disadvantage." *Bachelder*, 259 F.3d 1129. Here, there was simply no selection at all. In order to avoid the operation of § 825.200(e), Defendant had to explicitly state somewhere in its FMLA policy that it uses its fiscal year (July 1 through June 30) as the basis for calculating the leave year. The selection had to be "open," not "secret." Defendant apparently believes that its selection was "open" where employees looking for information on the FMLA had to (1) read portions of the Handbook not pertaining to the FMLA and (2) assume that the fiscal year approach used in that section also applies to the calculation of the FMLA leave year. The Court is unpersuaded.[3] Therefore, § 825.200(e) is operative in this case and Plaintiff is entitled to choose the

---

[3] Additionally, Anne Johnson, Defendant's Director of Human Resources, testified in her deposition that Defendant uses the "rolling" method of calculation set forth in 29 C.F.R. § 825.200(b)(4) and that this "has always been the case since [she has] been [at Marygrove] in terms of how we administered it." (*See* Pl.'s Resp. at Ex. B., p. 65.) Ms. Johnson testified that she has been Director of Human Resources at Marygrove since September 2000. (*See. id.* at p. 6.) Yet, as explained above, Defendant now claims in its motion papers that it utilized the "any fixed 12-month 'leave year'" method embodied in § 825.200(b)(2). Thus, Plaintiff is correct that

method most beneficial to her as the basis for calculation.

As stated above, Plaintiff asserts that the method most beneficial to her is the "calender year" method. *See* 29 C.F.R. § 825.200(b)(1). As the name implies, under this method of calculation, Plaintiff was entitled to twelve weeks of leave each calender year, from January 1 through December 31. The Court agrees with the manner in which Plaintiff calculates her allowable leave using this method:

> Plaintiff was entitled to 12 weeks of leave for her serious medical condition within the calender year of 2004 . . . . Plaintiff utilized far less than that amount during the calender year of 2004. Her FMLA leave began on December 13, 2004. That 12 month period ended several weeks later on December 31, 2004. Then, pursuant to 29 CFR § 825.200(c), plaintiff was entitled to a whole new 12 week period commencing on January 1, 2005. Pursuant to 29 CFR § 825.200(f), the dates upon which students and faculty were off for Christmas and New Years holidays do not count toward the 12 week allotment. The defendant closed for the Christmas and New Years holidays. Ex. B, pp. 28-29. Since January 1, 2005 fell on a Saturday, the defendant-college would have re-opened on Monday, January 3, 2005. Accordingly, a new 12 week period commenced on January 3, 2005. This results in a March 28, 2005 expiration of the 12 week allotment for the calender year . . .

(Pl.'s Resp. at 13-14.)[4] Therefore, Plaintiff had not yet exhausted her available FMLA leave when

"defendant *still* cannot get its story straight as to which 12 month period it has selected." (Pl.'s Resp. at 12) (emphasis in original). In fact, Ms. Johnson admitted in her deposition that it is unclear from the Employee Handbook which twelve-month period Defendant was utilizing. (*See id.* at Ex. B, p. 67.)

[4] Title 29, § 825.200(f) of the Code of Federal Regulations, states, in relevant part,

> For purposes of determining the amount of leave used by an employee, the fact that a holiday may occur within the week taken as FMLA leave has no effect; the week is counted as a week of FMLA leave. However, if for some reason the employer's business activity has temporarily ceased and employees generally are not expected to report for work for one or more weeks (e.g., a school closing two weeks for the Christmas/New Year holiday or the summer vacation or an employer closing the plant for

she was terminated on March 18, 2005. Moreover, Plaintiff's physician cleared her to return to work effective March 23, 2005 (i.e., before the expiration of her leave allotment). (*See* Pl.'s Resp. at Ex. K.) Therefore, as a matter of law, Defendant violated Plaintiff's FMLA rights under 29 U.S.C. § 2615(a)(1) when it terminated her on March 18, 2005, before the expiration of her leave allotment.

2.    <u>Plaintiff's Alleged Failure to Comply With Certain Statutory and Regulatory Requirements Under the FMLA</u>

Defendant argues that even if it terminated Plaintiff prematurely, Plaintiff is precluded from recovering under an FMLA entitlement theory due to her alleged failure to comply with three specific statutory and/or regulatory FMLA requirements. First, Defendant argues that Plaintiff is precluded from recovering because she failed to periodically report to Defendant as to her status and intent to return to work pursuant to 29 C.F.R. § 825.309(a). Next, Defendant contends that any premature termination was justified because Plaintiff failed to cure an alleged defect in her required medical certification form. Finally, Defendant argues that Plaintiff's failure to return her medical certification form within the time prescribed by Defendant invalidated her leave. The Court will examine each of Defendant's arguments, in turn, below.

(a)    <u>Plaintiff's Alleged Failure to Update Defendant as to Her Status and Intent to Return to Work</u>

Defendant contends that Plaintiff is not entitled to FMLA protection as a matter of law because she violated its reporting procedure, which required that Plaintiff "provide reports of [her] status and intent to return to work every 30-45 days while on FMLA Leave." (*See* Def.'s Mot.

---

retooling or repairs), the days the employer's activities have ceased do not count against the employee's FMLA leave entitlement.

at Ex. 5, ¶ 8.) Title 29, § 825.309(a) of the Code of Federal Regulations authorizes an employer to

"require an employee on FMLA leave to report periodically on the employee's status and intent to

return to work" so long as "[t]he employer's policy regarding such reports . . . take[s] into account

all of the relevant facts and circumstances related to the individual employee's leave situation." The

FMLA allows an employer to require periodic updates

> so that employers are not placed "in a position of grave uncertainty in
> complying with their obligations under the FMLA." *Jones v. Denver Pub.
> Schs.*, 427 F.3d 1315, 1320 (10th Cir. 2005). The FMLA does not "authorize
> employees on leave to keep their employers in the dark about when they will
> return." *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 971 (7th Cir.
> 2000).

*Bardwell v. GlobalSantaFe Drilling Co.*, 2007 WL 2446801, at *15 (S.D. Tex. Aug. 23, 2007).

According to the Eighth Circuit, "[e]mployees who fail to comply with legitimate reporting

requirements set by their employers are not entitled to reinstatement . . ." *Woods v. DaimlerChrysler*

*Corp.*, 409 F.3d 984, 991 (8th Cir. 2005). Defendant contends that Plaintiff failed to comply with

its reporting requirement and that she is therefore not entitled to recover under an entitlement theory.

In response, Plaintiff argues that Defendant never provided her with a re-certification

form to provide to her physician to complete and that, in any case, she did provide Defendant with

all requested re-certifications of her medical condition and anticipated return date by taking "the

unprecedented step of providing the defendant with <u>direct</u> access to her physicians, thus enabling

and permitting the defendant to directly speak with her physicians in order to obtain the most up-to-

date reports of her status and anticipated return." (Pl.'s Resp. at 5-6) (emphasis in original).

According to Plaintiff, "[t]his unfettered direct access to plaintiff's physicians provided the

defendant with updates whenever they desired them, including the 30-45 day intervals requested by

the defendant." (*Id.* at 6.)

Case law concerning § 825.309(a) is sparse. Moreover, neither party points to any authority in support of their respective positions. The Court has therefore conducted its own review of the applicable case law and concludes that, as a matter of law, Plaintiff's actions did not clearly violate Defendant's reporting requirement. The Court reaches this conclusion for four reasons. First, at least one federal court has held that an employee may fulfill his or her employer's reporting requirement via "proxy reports," unless such reports are expressly prohibited by the employer.[5] In the present case, Defendant's policy did not prohibit proxy reports. Again, Defendant required Plaintiff to "provide reports of [her] status and intent to return to work every 30-45 days while on FMLA Leave;" however, Defendant never prescribed any details regarding the source of the reports or how they were to be furnished. Plaintiff testified in her deposition that she asked her treating physician, Dr. Caesar Austin, to provide Defendant with continuing information as to the nature, seriousness, and probable duration of her disability. (*See* Pl.'s Resp. at Ex. A, p. 106.) Further,

---

[5] In *Meadows v. Texar Fed. Credit Union*, 2007 WL 192942 (E.D. Tex. Jan. 22, 2007), the employer required its employee to "furnish . . . periodic reports every Friday . . . of [her] status and intent to return to work." *Id.* at *29. The employer claimed that two of the reports were insufficient because they were proxy reports submitted by the employee's physician and not by the employee herself. *Id.* The court found that the employer had not shown that the employee failed to adhere to the employer's reporting requirement because the employer's FMLA policy did not prohibit proxy reports and the employer made no complaint about the report coming from the employee's physician rather than the employee herself. The *Meadows* court also noted that § 825.309(a) requires that an employer's policy regarding periodic reports "must take into account all of the relevant facts and circumstances related to the individual employee's leave situation" and that, because the employee in *Meadows* was under the care of her physician, the physician was "in a far better position to provide an authoritative and informative report on [the employee's] status than [the employee] herself." *Id.* at *30. Thus, the court ultimately held that the employer "ha[d] not shown as a matter of law that [the employee] failed to adhere to [the employer's] policies . . ." *Id.*

Defendant's Benefits Coordinator, Uda Daniel-Goodman, testified that Plaintiff gave her authorization to get information and updates regarding Plaintiff's disability. (*See* Pl.'s Resp. at Ex. C, p. 23.) Given this factual backdrop and the proactive steps taken by Plaintiff to facilitate the exchange of information, the Court concludes that Plaintiff's failure to provide periodic reports herself did not clearly violate Defendant's policy.[6] This is especially true where Defendant could have specified how the reports were to be furnished, but chose not to do so.

Additionally, three other reasons support the Court's conclusion that Plaintiff has not clearly violated Defendant's reporting policy. First, like in *Meadows*, there is nothing in the present record to indicate that Defendant ever complained about the fact that the periodic reports were coming from Plaintiff's physician and not Plaintiff herself. Second, as the *Meadows* court

---

[6] Defendant argues that 29 C.F.R. § 825.307(a) prevented it from contacting Plaintiff's physician. Section 825.307(a) reads as follows:

> If an employee submits a complete certification signed by the health care provider, the employer may not request additional information from the employee's health care provider. However, a health care provider representing the employer may contact the employee's health care provider, with the employee's permission, for purposes of clarification and authenticity of the medical certification.

Defendant's argument fails for two reasons. First, even if Defendant were correct (which it is not) that § 825.307(a) prevented it from contacting Plaintiff's physician, then Defendant violated § 825.307(a) by its own admission. *See* Def.'s Mot. at 9 ("Ms. Daniel-Goodman contacted Plaintiff's physician"). The Court will not allow Defendant to rely on a regulation it violated. Second, as one court has held, "this regulation deals only with the adequacy of the initial medical certification submitted by the employee's health care provider in support of a request for leave." *Kitts v. Gen. Tel. N., Inc.*, 2005 WL 2277438, at *14 (S.D. Ohio Sept. 19, 2005). The title of § 825.307—"[w]hat may an employer do if it questions the adequacy of a medical certification?"—supports this interpretation. Thus, nothing in § 825.307(a) prevented the exchange of information, especially with Plaintiff's consent, between Defendant and Plaintiff's physician with regard to periodic updates, a matter not related to the adequacy of Plaintiff's medical certification form.

acknowledged, § 825.309(a) requires that an employer's policy regarding periodic reports "must take into account all of the relevant facts and circumstances related to the individual employee's leave situation." Plaintiff in the present case, like the one in *Meadows*, was under the care of her doctor, who arguably was in the best position to provide the most "authoritative" and "informative" status updates regarding Plaintiff's progress. It was therefore not unreasonable for Plaintiff to ask her physician to provide any updates sought by Defendant on her behalf. Third, as noted above, the FMLA allows an employer to require periodic updates so that employers are better able to comply with their obligations under the FMLA and stay apprised of the employee's anticipated return date. *See Bardwell*, 2007 WL 2446801, at *15. In the present case, Defendant points to no evidence that it was kept in the dark or in any way dissatisfied with the updates it received.[7] In other words, Defendant has failed to show—or even assert—that the updates it received did not serve its purpose under § 825.309(a).

(b)    The Alleged Defect in Plaintiff's Medical Certification Form

An employee's right to FMLA leave "is not unconditional." *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 554 (6th Cir. 2006). "To garner its benefit, an employee must abide by the conditions provided in 29 U.S.C. § 2613, which provides, *inter alia*, that an employer may require an employee to submit a doctor's certification of the employee's condition." *Id.* "Failure to meet the certification requirements renders the employee's absences unprotected by the FMLA." *McDougal v. Altec Indus., Inc.*, 553 F. Supp.2d 862, 867 (W.D. Ky. 2008). Under § 2613(b), a

---

[7] In fact, when asked if "the doctor's office did give you the information they were able to give you at the time when you called," Ms. Daniel-Goodman answered "[y]es, they did provide me with an update." (*See* Pl.'s Resp. at Ex. C. P. 23.) Ms. Daniel-Goodman did not express any dissatisfaction with any updates received.

certification is sufficient if it states (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health-care provider regarding the condition; and (4) a statement that the employee is unable to perform the functions of her position.

Defendant contends that Plaintiff's medical certification form was defective and incomplete because it did not provide an exact date upon which Plaintiff would return to work. Instead, Plaintiff's doctor listed "March 2005" as the "probable duration" of Plaintiff's incapacitating condition. (*See* Def.'s Mot. at Ex. 4.) Defendant states that it continuously requested that Plaintiff cure this alleged defect but that both Plaintiff and her physician failed to do so. (*See id.* at 9.) As a result, Defendant argues that its termination of Plaintiff was proper.

Plaintiff, on the other hand, argues that her "physicians are not required to predict the future and provide an *exact* date of return . . . . [P]laintiff's physicians were only required to provide an estimate as to the 'probable' duration of the leave." (Pl.'s Resp. at 6) (emphasis in original). In support of this argument, Plaintiff cites 29 C.F.R. § 825.306(b), which authorizes an employer to elicit from its employee via the medical certification form, among other things, "the *probable* duration of the [incapacitating] condition." *See* 29 C.F.R. § 825.306(b)(2)(i); 29 U.S.C. § 2613(b)(2) (emphasis added). According to Plaintiff, the law

> does <u>not</u> require the certification to state an exact, specific date that the incapacity will end. The reason is obvious. Doctors cannot predict the future, and therefore cannot provide the exact specificity to which the defendant in this case claims it is entitled.

(Pl.'s Resp. at 15) (emphasis in original).

The Court need not determine whether Plaintiff fulfilled her obligation under 29

C.F.R. § 825.306(b)(2)(i) and 29 U.S.C. § 2613(b)(2) when her physician listed "March 2005"—rather than an exact date—as the probable duration of her incapacity. "At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." 29 C.F.R. § 825.305(d). Here, Defendant has not presented any evidence that it advised Plaintiff of the consequences of not providing adequate certification at the time it first requested medical certification from Plaintiff. Defendant's "Family or Medical Leave Request and Response" sheet warns that Defendant "may delay the start of leave until certification is submitted" and that "[i]f certification is not provided, leave may be denied." However, neither this document—nor any other before the Court—warns Plaintiff of the consequences of failing to provide an *adequate* certification.[8] Therefore, even assuming without finding that listing "March 2005" as the probable duration of Plaintiff's incapacity was insufficient under 29 C.F.R. § 825.306(b)(2)(i) and 29 U.S.C. § 2613(b)(2)—a conclusion the Court highly doubts since doctors cannot pinpoint the exact length of one's incapacity to the day—Defendant was not entitled to terminate Plaintiff for this insufficiency.

(c)     Plaintiff's Alleged Untimely Submission of Her Medical Certification Form

Defendant argues that Plaintiff failed to return her medical certification form within fifteen days, the time prescribed by Defendant, and that Plaintiff's absence was therefore not entitled to FMLA protection. Plaintiff admits that she did not return her medical certification form within

---

[8] Moreover, Plaintiff states in her affidavit, which is attached to her response brief as Exhibit U, that "nobody on behalf of Marygrove College ever notified me of any consequences for failing to cure any alleged defect in the medical certification completed by my doctor." (Pl.'s Resp. at Ex. U, ¶ 1.) Defendant has not presented any contrary evidence.

fifteen days, but asserts that Defendant never communicated to her that the form must be returned within such a time period.  Instead, Plaintiff states that Defendant requested receipt of the form "ASAP," but without providing a concrete deadline.

"An employer may require that a request for leave under [the FMLA] be supported by a certification issued by the health care provider of the eligible employee . . . as appropriate.  The employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a).  Further,

> the employee must provide the requested [medical] certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts.

29 C.F.R. § 825.305(b).  The Sixth Circuit has held that if an employee fails to return his or her medical certification form within the time prescribed by the employer (so long as the time prescribed is at least fifteen days after the employer's request in accordance with § 825.305(b)), the employee is precluded from recovering under an entitlement theory.  *See Frazier v. Honda of Am. Mfg.*, 431 F3d 563, 567 (6th Cir. 2005).  In *Frazier*, an employee requested leave due to wrist pain.  *Id*. at 565. His employer requested that he provide it with a medical certification form.  *Id*.  A few days later, the employee received from his employer a letter with (1) a sheet entitled "Important Facts About [the employer's] Leave of Absence Policy" and (2) a medical certification form to be filled out by his physician.  *Id*.  Both the letter and the fact sheet explained that the medical certification form must be returned within fifteen calendar days of receipt.  *Id*.  The employee returned the form one day late.  *Id*.  The employer discharged the employee, admitting that it would not have done so had the employee turned in the form on time.  *Id*.  The employee brought an entitlement claim under the

FMLA. *Id.* at 564. The court found that "[the employee's entitlement] claim fails since he did not submit a certification form by the deadline set forth by [the employer], a deadline which complied with the FMLA." *Id.* at 567. Defendant in the present case relies exclusively upon *Frazier* in support of its contention that, because Plaintiff failed to return her medical certification form within fifteen days of receipt, her FMLA entitlement claim fails. Even assuming that *Frazier* was correctly decided,[9] Defendant is wrong.

*Frazier* is not controlling in the present case because Defendant has not demonstrated that it informed Plaintiff of its purported fifteen-day deadline. In *Frazier*, the fifteen-day deadline was communicated to the employee in both a letter sent to the employee and the fact sheet. *See id.* at 565. The fact that the employee in *Frazier* was informed of the deadline was obviously crucial to the court's holding: "[the employee's entitlement] claim fails since he did not submit a certification form by the deadline *set forth by [the employer]*, a deadline which complied with the

---

[9] The Court has doubts whether *Frazier* was correctly decided. So far as this Court can tell, the rule pronounced in *Frazier*—that termination is an appropriate remedy for the tardy submission of a medical certification form—is in direct conflict with a Sixth Circuit case decided less than eight months after *Frazier*. In *Killian*, the Sixth Circuit expressly stated that an employer's remedy for an employee's late submission of a medical certification form is "delayed leave, not termination." 454 F.3d at 555. In so holding, the *Killian* court relied upon 29 C.F.R. § 825.311, which states, in relevant part,

> (b) When the need for leave is not foreseeable . . . an employee must provide certification . . . within the time frame requested by the employer (which must allow at least 15 days after the employer's request) or as soon as reasonably possible under the particular facts and circumstances . . . . If an employee fails to provide a medical certification within a reasonable time under the pertinent circumstances, the employer may delay the employee's continuation of FMLA leave. If the employee never produces the certification, the leave is not FMLA leave.

The Court need not resolve the apparent conflict between *Frazier* and *Killian* because—as explained below—Defendant's argument fails irrespective of which rule of law is employed.

FMLA." *Id.* at 567 (emphasis added). In the present case, the fifteen-day deadline Defendant

wishes to impose on Plaintiff is not mentioned in Defendant's Employee Handbook. It is also not

mentioned in the document entitled "FMLA Facts," which was furnished to Plaintiff. To the

contrary, Defendant wrote to Plaintiff that "[y]ou will be required to furnish medical certification

of a serious condition by ASAP (at least 15 days after you are notified of this requirement) . . ." (*See*

Pl.'s Resp. at Ex. F, p.1.) Defendant entirely fails to offer any proof that it informed Plaintiff of its

purported fifteen-day deadline.[10] Therefore, *Frazier* is inapposite. Accordingly, Defendant was not

entitled to terminate Plaintiff based on her alleged failure to comply with its purported deadline.[11]

_____

[10] In its reply brief, Defendant states as follows:

> In the case at bar, as in *Frazier*, Defendant's requirement that the medical
> certification be returned within 15 days . . . complied with the
> requirements of the FMLA and applicable implementing regulations.
> Defendant requested [this certification] in writing on December 11, 2004
> (with the request that the certification be received within 15 days).
> Nonetheless, Plaintiff did not provide any certification until January 12,
> 2005 . . .

(Def.'s Reply at 2) (citations omitted). The December 11, 2004, document referred to above is
apparently the "Family or Medical Leave Request and Response." Defendant represents to the
Court that this document contains "the request that the certification be received within 15 days."
*Id.* However, it simply does not. No where in this document does Defendant impose a fifteen-
day deadline on Plaintiff.

[11] Even if Defendant had informed Plaintiff of the purported fifteen-day deadline,
Defendant still would not have been entitled to terminate Plaintiff for failing to meet that
deadline because it failed to warn Plaintiff that termination was an available consequence for the
late submission of her medical certification form. *See* 29 C.F.R. § 825.305(d) (requiring that
"[a]t the time the employer requests certification, the employer must also advise an employee of
the anticipated consequences of an employee's failure to provide adequate certification"). The
Court notes that Defendant did inform Plaintiff that "leave may be denied" if a medical
certification is not provided at all, *see* Def.'s Mot. at Ex. 5, ¶ 2; however, this penalty is not
applicable here because Plaintiff did eventually provide Defendant with the form.

3.        The After-Acquired Evidence Doctrine

Defendant argues that, in the event it did violate Plaintiff's FMLA rights by prematurely terminating her, Plaintiff's recovery should be limited under the after-acquired evidence doctrine. Under this doctrine, an employee's damages are curtailed if the employer can establish, by a preponderance of the evidence, that it would have lawfully discharged the employee at some point after the unlawful termination for misconduct discovered after the unlawful termination. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361-363 (1995); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1070 (9th Cir. 2004); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996). In cases where the doctrine applies, "neither reinstatement nor front pay is an appropriate remedy" because "[i]t would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." *McKennon*, 513 U.S. at 362. An employee may recover back pay, but the recovery is limited to the "time period from the unlawful discharge until the discovery of the material evidence of wrongdoing." *Moos v. Square D Co.*, 72 F.3d 39, 43 n.3 (6th Cir. 1995). Put another way,

> both front and back pay are . . . cut off at the time that the defendant discovers evidence that would have led it to fire the plaintiff on legitimate grounds. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361-62, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). That result follows from the simple guiding principle that the employee should be restored to the position he or she would have been in absent the discrimination: the employee would have been fired regardless of the discrimination as a result of the misconduct at the defendant's place of employment. *See id.* at 362, 115 S.Ct. 879.

*Johnson v. Spencer Press of Me., Inc.*, 364 F.3d 368, 383 n.14 (1st Cir. 2004).

Defendant argues that even assuming it terminated Plaintiff before the expiration of her FMLA leave allotment, it would have fired Plaintiff in any case for "circumstances that resulted

after termination." (Def.'s Mot. at 12.)  As explained by Defendant,

> [i]t is not disputed that Plaintiff was incapacitated by a continuing and chronic health condition <u>after</u> her 12-week FMLA leave.  Plaintiff's uncontrolled diabetes required additional time off under the FMLA during the 2005 calendar year.  Since Plaintiff had already used her 12 weeks provided by the FMLA under the calender year, Plaintiff had no leave time remaining when she was [sic] suffered renal failure in May 2005 or when she was hospitalized for an additional two weeks on June 20, 2005.  This hospitalization resulted in the full amputation of Plaintiff's left foot, which would have also required additional time off.

(*Id.* at 12-13) (emphasis in original).  Thus, Defendant states that it "certainly would have fired Plaintiff when she took additional leave time for her serious health condition in excess of the 12 week FMLA leave."  (*Id.*)

Plaintiff does not dispute that her post-termination medical conditions would have required her to take additional time off work in 2005.  However, Plaintiff advances three arguments in response.  First, Plaintiff argues that she had 117 banked sick days available to cover any subsequent need for leave in 2005.  Next, Plaintiff states that Defendant should be precluded from asserting its after-acquired evidence defense because, throughout the course of discovery, it had claimed not to possess any evidence of after-acquired evidence.  Finally, Plaintiff contends that Defendant "has provided no proof, other than the unsubstantiated claim of its counsel, that plaintiff would have been terminated as a result of her June 21, 2005 hospitalization."  (Pl.'s Resp. at 19.)  The Court need not address Plaintiff's first or third arguments because it finds her second argument persuasive.

FED. R. CIV. P. 26(e)(1) requires that

> [a] party who . . . has responded to an interrogatory, request for production, or request for admission . . . must supplement or correct its disclosure or

response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

Rule 37(c)(1) discusses the consequences of a party's failure to comply with Rule 26(e)(1):

If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless . . . .

Plaintiff asserts that Defendant "has all along claimed," up until the filing of the present Motion, "not to possess any after-acquired evidence."  (*See* Pl.'s Resp. at 19.)  In support of this statement, Plaintiff directs the Court's attention to the parties' discovery materials.  Plaintiff's Interrogatory Nine, and Defendant's Response, states, in pertinent part, as follows:

9.   Please state whether the defendant, or its attorneys, possess any "after-acquired" evidence, which the defendant claims would have resulted in the plaintiff's termination of employment had the evidence or information been discovered earlier . . . .

ANSWER:

Defendant objects to this interrogatory for the reason that discovery in this matter is on going.  Without waiving said objection, Defendant states that it is currently unaware of any "after-acquired" evidence.  However, in light of the fact that discovery in this matter is not set to be completed until April 2008, Defendant reserves the right to amends [sic] its answer to this interrogatory until that time.

(Pl.'s Resp. at Ex. P) (emphasis deleted).[12]  Defendant has not demonstrated that it supplemented

_____

[12]  Further, Anne Johnson, Defendant's Director of Human Resources, testified in her deposition as follows:

or corrected its response to Interrogatory Nine in accordance with its duty to do so under Rule 26(e)(1). Therefore, Rule 37(c)(1) prevents the Court from addressing the merits of Defendant's after-acquired evidence defense at this time.

4.     <u>Statements Made by Plaintiff in Her Applications for Federal Social Security Disability Insurance ("SSDI") and State Medical Assistance</u>

Defendant argues that the Court should limit Plaintiff's ability to recover damages after June 2005 based on statements allegedly made by her in connection with her applications for federal SSDI and state medical assistance, respectively. For example, Plaintiff allegedly wrote in her SSDI application: "I BECAME UNABLE TO WORK BECAUSE OF MY DISABLING CONDITION ON December 6, 2004. I AM STILL DISABLED." (Def.'s Mot. at Ex. 14.) Defendant asks the Court to "enter an order precluding the recovery of back pay for any period after June 2005." (Def.'s Mot. at 16.)

Plaintiff advances several arguments in response. First, Plaintiff states that her SSDI application is unsigned and therefore inadmissible. Next, Plaintiff argues that, as a lay person, she

---

Q:     Sure. Since the time that Gayle Spencer had been terminated, from March 18 onward – March 18 of 2005 onward, is there anything that you've learned about her that if you knew it while she was employed that it would have resulted in her termination?

A:     Would have resulted in her termination? Oh, you mean, misconduct or –

BY MR. NISKAR

Q:     Yes.

A:     No, no.

(Pl.'s Resp. at Ex. B, p. 64.)

is not qualified to determine whether she was able to perform the essential functions of her job position.  Third, Plaintiff contends that SSDI applications are inadmissible in FMLA cases to establish inability to work.  Finally, Plaintiff asserts that even if statements she made to the effect that she was unable to work are admissible as to whether she could perform the functions of her job, such statements do not preclude her entitlement to recover damages under the FMLA.

Generally, a "plaintiff's claim for social security benefits does not preclude his FMLA claims."  *Baumgarden v. Challenge Unlimited, Inc.*, 2006 WL 334253, at *2 (S.D. Ill. Jan. 6, 2006).  This court reached the same conclusion in *McLaughlin v. Innovative Logistics Group, Inc.*, 2007 WL 313531, at *10 (E.D. Mich. Jan. 30, 2007).  In that case, plaintiff declared in her SSDI, Medicaid, and car insurance applications that she was "disabled" and "completely unable to work." *Id.* at *8.  The court determined that it was "unable to conclude whether [the plaintiff] was able to return work based on her applications for Medicaid, Social Security Disability Benefits, or car insurance payments because the standards for disability under these programs are different than the FMLA's standard." *Id.* at *10.  Accordingly, the court concluded that the plaintiff was "not precluded from proceeding with her FMLA claim" based on her own statements that she was "disabled" and "completely unable to work." *Id.*[13]  The Court finds that the *McLaughlin* court's analysis and reasoning apply with equal force to the present case.

Finally, contrary to Defendant's assertion otherwise, the Court's conclusion is consistent with the United States Supreme Court's decision in *Cleveland v. Policy Mgmt. Sys. Corp.*,

_____

[13] This conclusion comports with 29 C.F.R. § 825.115, which states that "[a]n employee is 'unable to perform the functions of the position' where the *health care provider* finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position . . ." (emphasis added).

526 U.S. 795 (1999). In *Cleveland*, the Court considered whether a SSDI applicant may simultaneously pursue an action for disability discrimination under the Americans with Disabilities Act of 1990 (ADA). *Id*. at 797. The Court answered in the affirmative, holding that "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA." *Id*. at 797-798. The Court continued,

> if an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system. Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to "set forth two or more statements of a claim or defense alternately or hypothetically," and to "state as many separate claims or defenses as the party has regardless of consistency." Fed. Rule Civ. Proc. 8(e)(2).

*Id*. at 805. However, the Court cautioned that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Id*. at 806.

In the present case, Plaintiff testified that she applied twice for SSDI benefits, once in June 2005 and again in July 2006, and was denied both times. (*See* Pl.'s Resp. at Ex. A, p. 43.) In her July 2006 application, Plaintiff wrote that she was unable to work since December 6, 2004, because of her disabling condition. (*See* Def.'s Mot. at Ex. 14.) Defendant claims that this statement precludes recovery of FMLA damages from June 2005 onward under an entitlement theory. However, "if an individual has merely applied for, but has not been awarded, SSDI benefits," as has Plaintiff in the present case, "any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system." *See id.* at 805.

Additionally, Plaintiff explains the apparent contradiction as follows: "[a]fter plaintiff lost her job, she lost her means of financial support, and had to apply for Medicaid. In order to be considered for Medicaid, plaintiff was <u>required</u> to apply for SSDI benefits." (Pl.'s Resp. at 28) (emphasis in original). In *McLaughlin*, this court held that an identical explanation was "satisfactory" under *Cleveland*. *See* 2007 WL 313531, at *10. Therefore, the result reached in the present case is both consistent with, and required by, *Cleveland*.

(B)    *Plaintiff's Retaliation Claim*

Plaintiff alleges that Defendant "[i]mproperly and unlawfully retaliat[ed] against [her] for exercising her rights and protections under the FMLA and the regulations promulgated thereunder . . ." (Compl. at ¶ 25j.) "[T]he FMLA . . . affords employees protection in the event they suffer retaliation or discrimination for exercising their rights under the FMLA." *Arban*, 345 F.3d at 402. Specifically, "[a]n employer is prohibited from discriminating against employees . . . who have used FMLA leave." 29 C.F.R. § 825.220(c). "This prohibition includes retaliatory discharge for taking leave." *Arban*, 345 F.3d at 402 (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)).

"To establish a prima facie case for retaliation under [the] FMLA, a plaintiff must establish: (1) that he or she availed himself of a protected right under the FMLA; (2) that he or she was adversely affected by an employment decision; and (3) that a causal connection exists between the exercise of the protected right and the adverse employment decision." *Joostberns v. United Parcel Servs., Inc.*, 166 Fed.Appx. 783, 790 (6th Cir. 2006). "A plaintiff asserting a claim of retaliation under the FMLA must produce either direct or circumstantial evidence of such retaliation." *Alston v. Sofa Express, Inc.*, 2007 WL 3071662, at *10 (S.D. Ohio Oct. 19, 2007).

"Direct evidence generally involves an admission or a statement by the decision maker regarding his discriminatory intent." *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 742 (7th Cir. 2008).[14] "Absent direct evidence of unlawful conduct, FMLA-retaliation claims are evaluated according to the tripartite burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).

Defendant argues that it declined to reinstate Plaintiff because, effective March 31, 2005, it had eliminated Plaintiff's position as part of "large scale downsizing at the time of Plaintiff's FMLA leave." (Def.'s Mot. at 7.) Plaintiff, on the other hand, contends that the alleged elimination of her position does not preclude recovery under the FMLA because the alleged elimination was impermissibly related to her having taken FMLA leave. Because there is clearly a genuine issue of material fact as to whether the alleged elimination of Plaintiff's position was

---

[14] Further, as explained by the Sixth Circuit,

> [i]n discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). "In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

*In re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007).

related to her leave, the Court will deny Defendant's Motion with respect to Plaintiff's retaliation claim.

"Nothing in [ 29 U.S.C. § 2614] shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave."  29 U.S.C. § 2614(a)(3)(B).  This means that "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."  29 C.F.R. §§ 825.216(a), 825.312(d).  Moreover, "[a]n employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment."  *Id.* at § 825.216(a).  As aptly stated by the Seventh Circuit, a plaintiff

> need not prove that retaliation was the *only* reason for her termination; she may establish an FMLA retaliation claim by "showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005).  "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Id.* (quoting *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004)).

*Lewis*, 523 F.3d at 741-742 (emphasis in original).  Moreover, "[a]n employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration."  29 C.F.R. § 825.216(a)(1); *see also* 29 C.F.R. § 825.312(d).

Defendant states that Plaintiff's position was eliminated effective March 31, 2005, "as a result of a work force reduction plan."  (Def.'s Mot. at 7.)  In support of this statement,

Defendant points to the deposition testimony of Anne Johnson, its Director of Human Resources, to the effect that (1) Plaintiff's position was combined with another job position after her termination, (2) there was "restructuring" within the college, and (3) Defendant was "downsizing considerably" around the time of Plaintiff's termination (*See id*. at Ex. 2, pp. 20, 23-24.) From this evidence, Defendant believes that it is entitled to summary judgment on Plaintiff's retaliation claim.

Plaintiff argues that her job would not have been eliminated but for her having taken FMLA leave and that the alleged elimination of her position was therefore impermissibly related to her FMLA leave. Plaintiff relies on a letter dated April 20, 2005, from Dr. Glenda D. Price, the President of Marygrove College, to Plaintiff. The body of Dr. Price's letter reads as follows:

> I am in receipt of your letter dated April 8 requesting that I offer you the opportunity of future employment at Marygrove College. Please be advised that you are free to apply for any open positions for which you qualify. The process of restructuring that is occurring in several units of the institution will result in an overall decreased workforce but it is not targeted at individuals. The decision to eliminate your position was an aftermath of your failure to return following the conclusion of your medical leave. It was not initially on our list but was viewed as a target of opportunity *due to your absence* and failure to return.
>
> It is not my prerogative to consider or not consider a position for you. Each hiring manger makes decisions on the personnel in their area. I regret that you believe that I am precluding your employment at the College.

(Pl.'s Resp. at Ex. M) (emphasis added). Plaintiff argues that the four italicized words at the end of the first paragraph demonstrate that the decision to eliminate her position was impermissibly related to her FMLA-protected leave. Defendant counters that "the full text of [the] letter demonstrates that it was Plaintiff's failure to return <u>after</u> her leave that caused Defendant to re-evaluate the need for the position of Director of Student Life – not Plaintiff's exercise of FMLA leave itself." (Def.'s Reply at 3) (emphasis in original).

The Court finds that Dr. Price's letter constitutes direct evidence from which a reasonable jury could conclude that Defendant's decision to terminate Plaintiff was motivated, at least in part, by her FMLA-protected leave.[15]  In her letter, Dr. Price admits that the elimination of Plaintiff's position was "due to [her] absence . . ."  (Pl.'s Resp. at Ex. M.)  It is certainly true that Dr. Price emphasizes in her letter that the decision to eliminate Plaintiff's position was also motivated by lawful considerations (i.e., Defendant's belief that Plaintiff failed to return to work following the expiration of her FMLA leave), but as explained above, Plaintiff must only show that the unlawful motive was "*a* factor that motivated the defendant's actions."  *See Lewis*, 523 F.3d at 742 (quoting *Spiegla*, 371 F.3d at 942) (emphasis added).  It will be for the jury to determine based on the evidence offered at trial whether Defendant's decision to terminate Plaintiff was retaliatory.  Summary judgment on Plaintiff's retaliation claim must therefore be denied.

IV.    **CONCLUSION**

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment [docket entry 27] is denied.


                                        S/Bernard A. Friedman_____
Dated: August 26, 2008                  BERNARD A. FRIEDMAN
       Detroit, Michigan                CHIEF UNITED STATES DISTRICT JUDGE

---

[15] Given the existence of direct evidence in this case, the Court need not apply the *McDonnell Douglas* burden-shifting framework applicable in cases where circumstantial evidence is the only kind available.